## CIRCUMSTANCES ABSOLVING A DEFAULTING DITCH CONTRACTOR.

Common Pleas Court of Williams County.

BOARD OF COMMISSIONERS OF WILLIAMS COUNTY V. JOSEPH CARROLL AND LEWIS KRYLING.*

Decided, December 11, 1906.

*County Ditches—Contract for Improvement of—Containing Stringent Clause Making Time the Essence of the Contract—Default of Lower Contractor Prevents Contractor for Upper Section from Going Forward with his Work—Delay which Absolves a Contractor—County Commissioners—County Surveyor—Sections 4475, 4476, 4477 and 4478.*

1. Notice to a contractor is notice to his surety, and special notice to the surety is not necessary.
2. Where a contractor for the improvement of an upper section of a county ditch in which water runs all of the year is prevented from going forward with his work by the failure of a lower contractor to complete his section, the upper contractor will be allowed time beyond that named in his contract, notwithstanding time is made of the essence of the contract.
3. Where the delay caused by the default of the lower contractor exceeds one hundred and twenty days, the question whether it was an unreasonable delay with reference to the upper contractor is not one for determination by the jury, but is of such a character as in law to absolve the upper contractor from the obligations of his contract.

*Edward Gaudern,* Prosecuting Attorney, for the plaintiffs.
*C. E. Scott,* for defendant, Carroll.
*C. A. Bowersox,* for defendant, Kryling.

This was an action upon the bond of a ditch contractor, charging default in not completing the job. The facts are as follows: The improvement in question was an old ditch, in which water runs the year through. Carroll bid off Sections 3 and 4, and gave Kryling as his surety on his bonds. By the terms of

* Affirmed by the Circuit Court without report, May, 1907.

his contracts he was to complete Section 3 by September 15, 1904, and Section 4 by September 30 of the same year, the contracts providing in terms that time was to be of their essence. One Lewis Ross contracted to complete Section 1 and 2, which were below those over which this controversy arose. By the terms of his contracts Ross was to complete the outlet section, 1, by August 15, 1904, and the next upper section, 2, by August 30. Neither section was completed on time, but some work was performed on Section 1 late in the fall of 1904, by Theodore Kampf, the surety for Ross. Kampf finally completed Sections 1 and 2, shortly prior to July 11, 1905, at which date both Sections 1 and 2, were accepted by the county surveyor, and the warrant of the county auditor was issued to Kampf in payment thereof.

Within a short day after the first day of September, 1904, Carroll went upon Sections 3 and 4 with teams, scrapers and shovels, and men to perform his contract, but the ditch was full of water and after a *bona fide* attempt of several hours he quit. He left his tools in the vicinity of the work for several weeks, but no further work on the contract was attempted by him. During all this time the ditch was full of water. In behalf of the plaintiffs, it was admitted that at no time prior to the completion of Sections 1 and 2, or at or shortly before July 11, 1905, was it practicable for Carroll to perform the construction of Sections 3 and 4, because of the lack of completion of Sections 1 and 2.

The surveyor testified that after Section 1 and 2 had been completed, and on or shortly after July 11, 1905, he notified Carroll of their completion and notified him to proceed with the construction of Sections 3 and 4, which Carroll refused to do; that after the surveyor had caused part of the work on Section 3 to be completed, he again saw Carroll and Carroll refused to go ahead with the work, or to have anything to do with it. On behalf of defendants, issues of fact were taken as to the time and character and extent of special notice to Carroll, who admitted that he knew of the completion of Sections 1 and 2 at or about July 11, 1905.

The surveyor thereafter in August or September of the same

summer of 1905 employed men by the day to construct both Sections 3 and 4, and the men who did this work were paid for their labor out of the county treasury. The cost of completing Section 3 was $——; and the cost of completing Section 4 was $——, no part of which was paid by the defendant or by any other person, and the county treasury has not been reimbursed from any source and the action is brought to recover these amounts with interest on Carroll's bonds.

At the conclusion of plaintiff's testimony, counsel for both defendants moved for a direction by the court for a verdict for defendants for that the evidence did not sustain plaintiff's cause of action. The motion was then overruled. Thereupon, at the close of defendants' testimony, which did not materially vary the testimony of plaintiff, defendants moved the court to direct a verdict for each of the defendants, upon the whole evidence, embodying the foregoing facts. The latter motion was sustained and verdict directed for each of the defendants, upon the opinion of the court which follows, to all of which the plaintiffs excepted.

KILLITS, J. (passing upon the motion, orally).

This case presents some features that I am sure are new to the entire bar here, at least to the court and to that representation of the bar engaged in the trial of the case, and a construction of the special ditch statutes is required in parts that apparently have never reached the courts before. At any rate there is no reported case in this state which has come to the attention of the court; certainly none referred to in any annotation, that tends to enlighten the court as to how these statutes should be construed. The ultimate question in the case is therefore an original one, and not only that but an interesting and important one.

In the first place there is no question whatever, on familiar principles, but that both the ditch contract and the contractor's bond should be interpreted, generally at least, in the light of the statutes, and it is equally well settled on familiar principles that the terms of the contract are necessarily to be read into the bond; the surety on the bond is charged with full knowledge of, and is bound by the terms of the contract.

In this particular case the contract has a stringent clause in it which in my judgment is not necessary, but it is in this con-contract and it both binds and protects the surety, "And it is also fully understood by me that I am liable on my bond with this contract given, for all delays after the expiration of the time named for the completion of the job, and for all damages that may accrue in consequence of my failure to complete the labor within the time required. Time being the essence of this contract."

The contract provides that Carroll must complete it on or before the 30th of September, 1904. We all understand what is meant by the expression, "Time being of the essence of the contract." We know that that means that this contract is broken unless the terms of it are complied with within the date specified. And we know that that clause is written in this contract because of the interpretation given to contracts omitting it, that some leeway as to time is possible because of the omission.

Early in the case a demurrer was offered and interposed to the separate answers of the defendants, when the question arose whether the stringent provisions of this contract could be held against these defendants and the court was forced at that time to hold, and I believe rightly, that, notwithstanding the terms of the contract as to time and the effort in preparing it to make time of its essence, and unlike the other provisions of this character, latitude should be given to the contractor to extend his time beyond the limit of the contract, because not only the law but common sense suggests that an upper section of the ditch, and more especially as in this case one which runs water the year around, can not be properly constructed until the lower ones are constructed, and when it happened, as in this case, without the fault of the upper contractors, that the lower sections are not constructed, notwithstanding the stringent provisions as to time in the contract, we are sure the defendants can not be held to a default wholly arising because of the failure of construction of the lower sections.

We can not be asked to construe either the laws or a contract in favor of an absurd situation and then mulct the defendants

in damages because of that condition.   So that the court thought
then, and before this case was begun to the jury, that, notwith-
standing the terms of the contract the defendants were only held
to a performance of its conditions within a reasonable time after
its expiration; and the question which it seemed to me yester-
day I should leave to this jury was, whether or not within a
reasonable time after the date of the contract the defendant,
Carroll, as principal contractor was called upon to comply with
its terms.

The exact question submitted to the court before dinner was
not whether the surety Kryling was entitled to notice, because
if Carroll were entitled to notice clearly Kryling was.   The ques-
tion really was whether notice to Carroll operated as notice to
Kryling.   Under a number of authorities I am of the opinion that
notice to Carroll is notice to Kryling, and that any special notice
need not be given to him.   But the inquiry became broader than
that, and led the court to consider whether the commissioners had
a right of action against either of the defendants; that is, is the
court warranted in submitting to this jury a consideration as to
whether the delay in this case, not occasioned by the fault of
Carroll, was so unreasonable as to absolve Carroll from his con-
tract?

The facts show that Carroll was to begin on Section No. 3
about the first of September, and the evidence shows that prior
to the first of September, by contract with Ross, working Sec-
tion No. 2 was to be finished, but that Section No. 2 was not
actually finished until near the 11th of July, 1905, ten months
and eleven days after it should have been finished by the con-
tract with Ross.   Now is it the law for the court to submit that
length of time to the jury, for the jury to say whether it was a
reasonable or an unreasonable delay?

We must construe all these statutes together to get a har-
monious conclusion.   Section 4475 requires that the commis-
sioners, after all the preliminaries are settled, shall fix the time
for the sale of the improvement at public outcry in sections of
not less than 100 feet nor more than 16,000 feet in length, and
shall cause notice to be given of the time and place of the sale.

It suggests itself to us at once that the object in dividing a ditch into working sections is to facilitate its construction.

Section 4476 provides that the county surveyor in selling the ditch shall begin at the working section of the outlet, the mouth of the improvement, and shall sell up the stream, and shall fix a day when the job shall be completed, not exceeding in any case 150 days from the day of sale, and then shall sell each remaining working section in its order, up stream, and require the labor on each to be completed within a time so fixed that will, as near as practicable, secure an outlet for the water as each section is completed. It is that provision which unquestionably permits Carroll to make the defense that he makes. Then follows the provision that if the construction of such work will be facilitated thereby, the commissioners may authorize the sale or construction of such work, or either, to be made or performed in a different order and time from that hereinabove specified.

Section 4477 says that the work shall be done under the supervision of the county surveyor, and provides for the payment under certain circumstances. Section 4478 provides that—

"Any job not completed within the time fixed in the contract and bond may be re-estimated by the county surveyor and re-sold by him to the lowest possible bidder, or he may complete it at the expense of the contractor and bondsmen, but such jobs shall not be re-sold for a greater sum than such estimate or re-estimate, nor a second time to the same party; a contract and bond shall be entered into as hereinbefore provided, *but the commissioners may, for good cause, give further time to any contractor, not exceeding 120 days.*"

I have quoted these different statutes to suggest that the Legislature is aiming to secure the speedy construction of these improvements. That is unquestionably the object in dividing it into sections, and making a limit to the authority of the surveyor in Section 4476 as to the time in which he may require the section to be completed; and surely that is the object in Section 4478, limiting the power of the commissioners to extend the time beyond 120 days.

From the provisions of these sections the court must ascertain what a reasonable time is, and I submit that the question is an-

swered by the statutes; that any delay in the construction of any working section beyond 120 days not chargable to the contractor for an upper section is necessarily unreasonable as to such upper contractor, which will absolve him from the obligations of his contract.

If the commissioners, under the law, can not extend the time of any contract for more than 120 days, surely no innocent contractor may be delayed beyond such a period by the mere default of some other person. It should not be permitted that a defaulting contractor may compel one, on an upper section to stand around and wait and be put to a derangement of his business for more than the statutory period, at least. Every person who contracts for the construction of an upper section on a county ditch does so with the liability that his work may be delayed for four months; such condition is necessarily read in his contract from this provision that the commissioners may extend the time on any section for such period. But can he be held to a delay longer than that; I do not think he can. I am satisfied that it is the duty of the county surveyor, under Section 4478, unless the commissioners extend the time under the same section, to see to it that a defaulted lower section be completed forthwith, or just as rapidly as it may be done after default, either by a resale or by private work, so that the upper contractor may have the opportunity at the earliest time to complete his work. If the default of the surveyor in this behalf brings about any greater delay to the upper contractor than 120 days, such delay is an unreasonable one which absolves such upper contractor from his obligation, if he himself is not party thereto. So thinking, I feel now that I should have granted the motion last night to take this case from the jury at the conclusion of the plaintiff's case. If that were my duty then, it is equally so now, and that I shall now do. If the court is right in this construction of the statutes, it will conduce to a more speedy completion of county ditches. The jury is directed to return a verdict in this case in behalf of each of the defendants.